Good morning, your honors, and may it please the court. My name is David Casarubias Gonzalez, counsel for defendants' appellants. I'll be reserving two minutes of my time for rebuttal, and I'll be mindful of the clock. The district court's order is not case management. It's control over California's prisons. It bars the state's prison administrators from doing the most basic thing any system should be able to do to improve, evaluate itself. But is that – I mean what is the purpose of the tours? That seems to be one of the issues here. Is the tours for essentially litigation purposes or is it purely internal? I mean maybe it's difficult to divide these things given the state of play here where the prisons are now subject to overarching court review. Precisely, your honor. This entire lawsuit encompasses the entirety of the state's mental health services delivery system. And therefore any consultant tours of that system will necessarily relate to the litigation. But to answer your question directly, the primary objective of the study is to gain a comprehensive understanding of the mental health services delivery system and the day-to-day delivery of those services at CDCR's institutions and compare it to nationwide standards. Counsel, let me just ask you this. You may be aware I was involved within one of the many earlier Coleman cases. And this litigation has been going on for 30 years at least. And in the last few years Judge Mueller has been working with this, trying to make it work, going back and forth between you all and the state. I get your point that you think this is an injunction. You think it's barred by the PLRA. I'm not seeing that. I would appreciate your taking the time. We know the facts. Take the time to explain why, number one, this is an injunction. And number two, why you think this violates the PLRA. Well, that leads me to my first point, your honor. This is an injunction because it indefinitely enjoins defendants consultants from stepping foot on their own prison grounds. A privilege that is now exclusively reserved for the court's special master. Now, in this case, the court enjoined defendants from the facts. I thought that originally both the state and your folks went together. But then they started to do so many of them, they couldn't keep up with it all. And then you all want to go alone. And the state says, wait a minute, you can't have that. If you're going to use it as evidence, we want to see what you're doing. Isn't that what happened? No, your honor, that's not what happened. Okay, tell me what happened. What happened is defendants gave notice of these consultant tours to the plaintiffs and informed them the purpose and scope of the tours was to compare CDCR's delivery of care to national standards. They invited plaintiffs counsel and the special master to attend the tours. Both agreed without objection. The tours began, the consultants began their review of the state facilities, and only then did plaintiffs counsel begin to lob various obstacles before the consultants that essentially led the tours to grind to a halt. But it didn't, again, I just want to make sure I understand the facts correctly. What I thought the record showed was that the consultant began to talk to individual inmates and trying to make the interview them about their situation. Is that mistaken? Yes, your honor. Okay, what was happening then? The consultants wanted to observe one-on-one patient care, but plaintiffs made objections to that request. And therefore, in an effort to collaboratively resolve their dispute, they presented that issue in a joint statement to the district court. Defendants' position was that just like the special master, defendants' consultants should be able to observe one-on-one patient care. Plaintiffs did not agree. That was the only dispute, aside from the scope and pace of the tour pending before the court, that should have been resolved as an ordinary case management order. But rather than doing that, the court overstepped. The court instead indefinitely enjoined defendants from conducting any tours, period. That is why this is an injunction, because defendants can no longer have the consultants of their choosing step foot on their own prison ground and inform them on how to implement, modify, or improve any of the mental health care services that they provide. Well, I mean, at least not now. But I think the district court's order allows you and your clients to go back, either later or upon a different showing or both, and ask for these tours. So I don't know that it's right to say you're permanently blocked from ever doing something like this. You could maybe do it later. That's to be determined. No, Your Honor. And it's clear from the district court's order that she's already prejudged this issue. I don't know. I think that's difficult to say that. I mean, we have a record that we have, and the district court's in the middle of superintending this massive piece of litigation, and you're asking for something that seems to at least have a pretty clear nexus to the litigation. It's hard to say it's unrelated to it. I understand you're probably not pleased with the litigation as a whole, but that matter has been determined long ago. So I don't see why you're blocked from coming back to the district court later and saying, here's our new basis for this. The litigation has now progressed to a certain point we think now is the time. And I don't see why you're saying she would prejudge that. I don't see a basis for that. Your Honor, because one of the two preconditions that the court set out in her order, in order to go back to the court, was proving first that any tours are unrelated to the litigation. And as Your Honor and Judge Smith noted, it's virtually impossible to demonstrate that any touring of the mental health services delivery system would be unrelated to the litigation. So that alone is a bar to any future tours that relate to the delivery of mental health care. And I think your question actually illuminates a larger problem with this case. The case has been going on for three decades. I think in the process of the remedial phase of this case, the court now views the California's prison systems as its own prisons. The district court views the state institutions as being the district court's institutions. The plaintiffs view the prisons as being their prisons. That's why they're calling this discovery. This is not discovery. You don't conduct discovery on your own system. But because through the litigation, because the court is now looking at these prisons as its own prisons, it's barring the tours and calling it discovery, which it cannot be discovery because one does not conduct discovery on themselves. Counsel, don't you feel a certain amount of empathy for Judge Mueller? As the state well knows, in the opinion that I issued, our panel did recently, there's going to be potentially hundreds of millions of dollars of sanctions for the state's failure to do some of the things you're talking about. This is not a one-sided deal at all. Your side has won some things. They've won some things. The poor judge is just trying to get it so you can get along, talk. She said, if I understand it correctly, that the tours are just duplicative of the special mattress periodic monitoring reports, which you're allowed to follow with them. You're not barred from that. And she just doesn't want it all mixed up. We've got all these people trying to say different things. She wants to have it more organized. What's the matter with that? That's an excellent point, Your Honor. The tours are not coextensive with what the special master monitors. The special master has a limited role in this case to monitor defendants' compliance with the compendium and the program guide and the court's orders, in other words, the remedial plans of the case, whereas defendants' consultants are going far beyond those limits. Their role is to evaluate CDCR's delivery of mental health care and compare it to national standards, compare it to other states' mental health services delivery systems. And how is that relevant? It's relevant because that is the purpose of these tours. Defendants hired these consultants to let them know, hey, how are we doing when compared to other systems across the country? And the court is saying, you can't do that. What the court actually is saying, as I read it, is that will interfere with the expeditious resolution of the case. And so it seemed to imply you were kind of at the end of the road on that. Why isn't that case management? It's not case management, Your Honor, because we are not at the end of the case. Where are you? Defendants are still in the remedial phase, and under the Prison Litigation Reform Act, they must be the ones that bring the prisons back to constitutional compliance. The court is essentially telling them, you no longer have a role in this. That is not how the Prison Litigation Reform Act works. There are limits to court power. Congress set limits to the court's power. This case management order is not case management. It's micromanagement. And I see that I'm running out of time. We'll put two minutes on the clock for rebuttal. Thank you, Your Honor. Thank you. Good morning. Lisa Ells for the Plaintiff Class. The state's appeal is predicated on two manifestly false premises. This is not an injunction. This is basic case management to resolve a discovery dispute, like district courts do every single day. Just weeks after the district court found the state in contempt, the state noticed months and months and months of day and night nonstop expert tours, which included interviews and observations of our clients. We objected. The parties submitted a joint statement regarding their discovery dispute, like normal discovery. The district court looked at the record and history of this case and ruled this particular set of expert tours should not resume. Instead of taking the court's invitation to show that its request was appropriate and proportional to the needs of the case, like all discovery must be, the state ran straight to this court. But this court does not review discovery and case management orders. They are interlocutory appeals. This court should dismiss. The district court also did not prohibit the state from engaging in self-assessment. The state sent a notice of expert inspections of its prisons, including interviews of our clients and their confidential mental health treatment sessions, expressly for the purpose of using it in litigation. That has nothing to do with self-assessment. It has everything to do with discovery. But do you think there are tours that the state could conduct on its own that wouldn't that would be okay? Absolutely. And the court here, in multiple orders, in the October 2023 order and the order on appeal, expressly said you can do whatever self-assessment you want. And in fact, in 2021, these same experts conducted a tour, conducted a series of tours, which the state told the district court was purely for self-assessment, would not be used in litigation. So are there kinds of things that you think make this tour improper, whereas another tour might be okay, like, for example, observations of your clients? Do you think the state could do that? Or is that just not something they could do without the district court's permission, in your view? I think this particular set of tours, the burdensomeness, the intrusiveness, and the particular phase of the case were very important to this order. So I think any future requests that the state might make would be held to normal discovery standards. Is it proportional? Is it necessary? For instance, there is a process in this case for the state to get discovery for motions, for the contempt proceedings, and for termination. And so it can make it showing that it needs this discovery, including potentially interviews of our clients, in an appropriate context, when there is actual litigation before the court. But this is case management. There was no related litigation. It was purely to build a record and sandbag the plaintiffs in advance of a planned termination motion that they said might be coming. Is there something in the record where you have the state essentially admitting that it intended to use what their experts found in the litigation? Yes, Your Honor. In the original letter noticing these tours, the state expressly said, we reserve the right to use this to terminate this case. It also said in its brief before this Court that the preclusion of these tours inhibits its ability to move to terminate. That is as far as they are. Are they allowed to move to terminate? Absolutely, Your Honor. Right. All they have to do is give 6 months' notice, and then the Court has said, in an order that the state did not appeal, that they will – that she will set a status conference to open discovery and expert tours within a week of their filing that notice. Okay. The state seems to be saying two things to me. One is, this has nothing to do with the litigation, and so we should be allowed to do it. The other would be, it has everything to do with the litigation because we need this information to bring a motion to terminate. That's exactly right. Okay. So on the latter, if they are allowed to bring a motion to terminate, how would they support that if they can't do a tour like this? Well, they most certainly can do a tour. They can do tours. They just need to give 6 months' notice, and then the Court will open expert discovery. That is the basis of the Court's earlier order. It understands that there has to be discovery for a termination motion, and it can make it showing at that point that whatever tours it wants to propose at that point are proportional and necessary for the inquiry before the Court termination. You mentioned at the beginning the suggestion that maybe the Court didn't have jurisdiction because this wasn't final. Although it does seem final insofar as it goes. This particular request has been denied. It's sort of without prejudice to some future requests. But in a post-judgment context, why wouldn't we actually have jurisdiction to just decide this on the merits? Under the final order? Yeah. Under 1291? I think, Your Honor, that it's not final because it's anticipating further proceedings. The Court invites a threshold showing that this discovery that the Court or that the defendants want. But not further proceedings within the confines of this particular request, right? I mean, there may be a future request and that's different, but why isn't this a kind of self-contained request that would then be final, just given the post-judgment context that we're in? I don't agree with that, Your Honor, because the Court specifically says here's the threshold showing you would need to make for these particular tours. It says your experts have already concluded that the program guide, the minimum constitutional standard in this case, exceeds national standards. But you didn't present any evidence or explain why. If you do that, I will consider it, but you didn't make any evidentiary showing to that effect. So the invitation for a threshold showing, I think, which is at ER 7 in particular and, again, reiterated multiple times in the order, I think invites further proceedings. The Court also notes that if they want expert discovery, they just have to notice termination and it opens. So I think all of those are invitations to say if you want these tours, make a better showing that is consistent with the proportionality and necessity rules governing discovery in general. Show me that it's appropriate, given in the past you've conducted unethical ex parte tours, and show me that it will actually benefit the litigation, that it will move the litigation further. Because in the past, the expert tours the State has used have derailed the litigation and the remediation. It's sent them spiraling into litigation for no good reason. The tours that gave rise to the original termination motion, which were secret, which included unethical ex parte contacts with our clients that were then used against them, even with that, the Court found that the evidentiary showing in support of that termination motion was woefully inadequate. So the Court here has good reason to weigh whether this incredibly intensive discovery is appropriate at this phase of the case, when the State is already in contempt, when it is facing receivership, when it is literally at the point where the Court is trying to manage as carefully as possible the end of this Federal oversight. Well, dare I ask, what is the prospect for ending this case? Well, the Court is in the midst of considering a receivership. We are currently in the midst of working with a receiver candidate to develop a plan to cure the constitutional violations in this case. So that is the most, the seventh appeal the State has filed in the last two years is of that order initiating the initial phase of considering a receivership. That's pending here? That was filed last week, yes. So, you know, in sum, I — there is no final jurisdiction, our final order jurisdiction, because there are further proceedings. There's also no serious ramifications from this order. It is specific to one particular set of tours. It won't affect any other litigants in any other case. It is classic case management. It's just the conduct and progress of the litigation. And this Court has held repeatedly in Plata 2014, the Supreme Court has held in Mohawk that those kind of orders are not appealable, even under the final order provisions. And obviously, for the same reasons that it's not an injunction, it's not appealable under 28 U.S.C. 1292a1. And unless the Court has further questions for me, I will cede my remaining time. Thank you very much. Just a few points on rebuttal. First, discovery is closed. There is no discovery in this case because we're in post-judgment proceedings. Now, Plaintiffs' Counsel relies on the six-month notice period as being defendants' opportunity to notice termination and therefore get expert discovery into their own system, which doesn't make sense. But putting that aside, in order for defendants to notice termination in compliance with their Rule 11 obligations, they have to have some evidence that termination is warranted. And if they can't get that threshold evidence by having their own consultants tour their own facilities and advise them as to whether or not moving for termination would be supportable, they can't even notice the termination that would then trigger a six-month period for plaintiffs to conduct discovery into defendants' consultants. I think what the district court was indicating was there were other reservoirs of evidence that you could use and rely on to at least make more of a threshold showing both for termination and for future tours. So how do you respond to that? If the court looks at the court's order, she states that she does not believe that expert tours are necessary because she's prejudged the issue already. She does not believe that defendants can even proceed because she's already made up her mind that they're not necessary. Well, it's not necessary now. Again, I somewhat take exception to the characterization that she's prejudged anything. I don't think that's apparent from the order. Well, Your Honor, I disagree, simply because of the two preconditions the court established in order for defendants to even get their experts through the prison gate in this case. And lastly, I just want to note that nothing could be further from the prior tours that plaintiff's counsel just raised. Defendants gave notice. Plaintiffs were invited. They started the tours together. They only had two outstanding disputes. So even under a case management analysis, the court abused its discretion because it had two issues before it to resolve, one-on-one patient observations and the scope and pace of the tours. And instead of resolving those discrete disputes, it enjoined defendants from touring their own facilities. Thank you, Your Honors. Thank you. This case is submitted and we'll turn directly to our next case.
judges: THOMAS, SMITH, BRESS